FILED
HARRISBURG, PA

FEB 27 2025

PER ___JRL___
DEPUTY CLERK

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

John DOE,

    *Plaintiff,*

v.

C. James Fox, Chairman of the Pennsylvania Board of Probation and Parole, in his official capacity; *et al.*

    *Defendants.*

Civil Action No. 1:25 cv 361

**Complaint for Declaratory Injunctive, and Damages Relief**

Jury Trial on all issues triable

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

### INTRODUCTION

1. Plaintiff is a United States citizen and citizen of the Commonwealth of Pennsylvania residing in Harrisburg, Pennsylvania, who is currently under supervision by the Pennsylvania Board of Probation and Parole (PBPP), after successfully having his probation supervision transferred to the Commonwealth of Pennsylvania under the Interstate Compact for Adult Offender Supervision (ICAOS).

2. In addition to the standard general conditions of probation, the trial court in Plaintiff's probation, case imposed only a singular special condition to register as a sex offender.

3. Defendants, who are all current or former PBPP staff tasked with supervising plaintiff, did impose conditions of supervision upon Plaintiff that are Sex Offender conditions routinely reserved for parolees. They were not imposed by the court, nor are they germane to, elaborate on, or interpret any condition of probation imposed by Plaintiff's trial court.

4.  Said conditions run the gamut from mandating regular attendance at an approved Behavioral Modification Therapy provider, to no unsupervised contact with his minor biological daughter and two stepchildren. These conditions are onerous, stigmatizing, and burdensome on Plaintiff's family relationships; Defendants have made no showing whatsoever that such conditions are narrowly tailored to Plaintiff's unique circumstances or that Plaintiff presents as a danger such that they are necessary.

5.  Defendants' arbitrary imposition continued enforcement of these conditions violate Plaintiff's substantive rights, including his parental rights, procedural due process rights, and equal protection of the law. Defendants have made no showing to Plaintiff that they will ever lift these conditions for the duration of his probation supervision.

6.  Plaintiff files the instant action for declaratory and injunctive relief, as well as damages due to the severe, ongoing, and perpetual abridgement of protected liberty interests and constitutional rights.

## JURISDICTION AND VENUE

7.  This action to vindicate Plaintiff's constitutional rights is brought under 42 U.S.C. § 1983. This Court has original jurisdiction over this action under 28 U.S.C. § 1331 (Federal Question Jurisdiction) and § 1343 (Civil Rights), as well as 28 U.S.C. § 1367 (Supplemental Jurisdiction) and the United States Constitution.

8.  Venue is proper in this district, under 28 U.S.C. § 1391, as the Defendants are all state officials whose offices are and actions occurred in the Middle District of Pennsylvania and are subject to the personal jurisdiction of the same.

9.  Declaratory and injunctive relief are authorized under 28 U.S.C. § 2201-2202.

## PARTIES

10. Plaintiff John Doe, a pseudonym, is a resident of Harrisburg, Pennsylvania and brings this action to vindicate both his own constitutional rights as well as the First Amendment rights of his minor daughter, Jane Doe ("Jane"). "Doe" or "Mr. Doe" as used in this Complaint, refers to John Doe unless otherwise specified. Doe is an out-of-state probationer who transferred his probation to the Commonwealth of Pennsylvania under the Interstate Compact for Adult Offender Supervision on or about September 2019. His current probation term runs through September 2029, with an additional 10-year probation period consecutive to the instant term. Defendants supervise his probation and Doe's identity is known to Defendants.

11. Defendant C. James Fox is the Chairman of the Pennsylvania Board of Probation and Parole (PBPP) and has served in that capacity since June 2023. As chairman, he is the chief executive over the PBPP and is responsible for the overall administration of PBPP operations and services. Fox provides direction to carry out PBPP's mission. All of Fox's actions in this matter are taken under color of state law and he is sued only in his official capacity.

12. Defendant Devin Bolton was, at all times relevant to this action, Plaintiff's direct supervising agent from approximately May of 2019 until approximately July of 2023. Bolton was a State Parole Agent and all of Bolton's actions in this matter were taken under color of state law. Bolton is sued in his official and individual capacities.

13. Defendant Brent Smiley was, at all times relevant to this action, Plaintiff's direct supervising agent from approximately July of 2023 until approximately March of 2024. Smiley was a State Parole Agent and all of Smiley's actions in this matter were taken under color of state law. Smiley is sued in his official and individual capacities.

14. Defendant Mike Daub was, at all times relevant to this action, Plaintiff's direct supervising agent from approximately March of 2024 until approximately July 2024. Daub was

a State Parole Agent and all of Daub's actions in this matter were taken under color of state law. Daub is sued in his official and individual capacities.

15.   Defendant Luke Knox was, at all times relevant to this action, Plaintiff's direct supervising agent from approximately June 2024 until approximately September 2024. Knox was a State Parole Agent and all of Knox's actions in this matter were taken under color of state law. Knox is sued in his official and individual capacities.

16.   Defendant Annette Gantz was, at all times relevant to this action, Plaintiff's direct supervising agent from approximately September 2024 up until and including the date of this action. Gantz is a State Parole Agent and all of Gantz's actions in this matter were taken under color of state law. Gantz is sued in his official and individual capacities.

## FACTS

17.   In December of 2014, Doe was paroled from Georgia to the Commonwealth, pursuant to a transfer of supervision under the ICAOS. As a part of that transfer, Doe was subject to as slew of routine parole conditions, imposed by both Georgia and the Commonwealth. Doe was under parole supervision by PBPP authorities up until the expiration of his parole, on or about September 28, 2019. Doe completed parole without incident and does not challenge the conditions imposed during his period of parole.

18.   Doe married his wife on May 25, 2018 and purchased a home for his new family in July of 2018. Because his wife has minor children from a previous relationship, Doe was only permitted to see his wife when Doe's stepchildren were at their father's, and Doe was not permitted to live in the house he bought because the stepchildren would be living there part-time. Doe purchased the home in advance of the termination of his parole, with the intent to live in the home with his family after the completion of his parole.

19. On or about May of 2019, Doe found out he and his wife were expecting his first biological child. With an expected due date of January 29, 2020, Doe did not anticipate any probation-related issues being around his family, as his parole was set to expire prior to her birth and he had no restrictions regarding minors imposed by the trial court.

20. On or about September 28, 2019, Doe initiated an ICAOS transfer request to transfer the consecutive term of probation to the Commonwealth. Doe understood the terms and conditions of probation imposed by the Georgia court, which consisted of the standard general conditions of probation, in addition to a singular special condition of probation; namely, to register as a sex offender in accordance with applicable law. Doe has absolutely no traditional sex offender conditions imposed on him by the Georgia trial court. Agent Bolton was Doe's probation officer at the time and completed the ICAOS transfer request.

21. Doe made several inquiries to Bolton over the course of September and October 2019 in order to find out what conditions, if any, PBPP would impose on his probation. Through text messages exchanged with Bolton, Doe learned that Georgia was not imposing any additional conditions on his probation, other than what was ordered by the trial court.

22. During the period between September 2019 and October 2019, Agent Bolton informed Doe that PBPP intended to give effect to the myriads of sex offender conditions imposed as a part of his parole but now with respect to his probation. Doe received no notice prior to PBPP imposing these conditions on his probation, nor was Doe given written copies of precisely what conditions were in effect. Upon information and belief, Doe was expected to know these conditions because he initialed forms as part of his parole transfer process in 2014 that listed the conditions.

23. As Doe prepared for the arrival of his daughter in late 2019, Bolton informed Doe that the only way he would be permitted to be around his minor daughter and minor stepchildren would be to have his wife complete the "Approved Supervisor Program" in conjunction with his weekly sex offender therapy. This consisted of multiple paid sessions with treatment staff, over an above his weekly sessions.

24. As a part of the Approved Supervisor Program, Doe's wife had to certify, under pain of prosecution, that she would not permit Doe to have unsupervised contact with his minor daughter or stepchildren. Doe currently relies on the Approved Supervisor Program as his only means of lawful contact with his child and stepchildren.

25. On or about January 16, 2020, Plaintiff's wife completed the Approved Supervisor program as directed by Agent Bolton. However, Doe was still not permitted to live in the marital home and had to maintain a second residence until Bolton or PBPP staff approved him to move into the marital home.

26. Doe's minor daughter, Jane, was born on January 31, 2020. Pursuant to the parole conditions that Bolton said were still in effect during Doe's probation, Doe was not (and is still currently not) permitted unsupervised contact with his minor, biological daughter or stepchildren.

27. Doe's wife was required to complete a second, distinct program in conjunction with Doe's mandated treatment provider, namely the Non-offending Parent Program (NOP), in order to get permission for Doe to move into the marital home. This consisted of multiple, paid sessions with treatment staff, over and above his weekly sessions, and was completed on or about April 2020

28. It took Plaintiff's wife approximately 4 months to complete the NOP and PBPP staff approximately two months to grant Doe permission to move into the marital home, a home

he purchased in 2018. Doe was finally granted permission to move into the marital home on or about July 2020.

29.     As a final effort on Doe's part to gain clarity as to what conditions were imposed by Pennsylvania on Doe's probation, Doe texted Bolton on June 20, 2022, asking about the conditions. There was no response. Doe emailed Bolton on July 18, 2022 inquiring about the conditions; again, no response.

30.     Doe's probation proceeded uneventfully from 2019 until August 2022 when an argument initiated by Doe's wife escalated into police contact. Doe's wife is an undocumented immigrant (currently in status adjustment proceedings) who is learning English as a second language; consequently, her ability to communicate with the responding police officers was sub par. Officers told Doe it was best for him to leave and just go to work that day, which he did. Officers told Doe's wife that it was in her best interests that Doe be charged with the summary offense of harassment.

31.     Doe was subsequently charged with summary harassment on or about August 29, 2022. As a result, Doe was ordered to leave the marital home indefinitely and to have no contact with his wife. Because he could not contact his wife, Doe had no avenue for lawful contact with his minor daughter Jane or stepchildren.

32.     Doe was effectively homeless, moving from one temporary hotel residence to another for months on end. During the period of about August 29, 2022 until about February 27, 2023, Doe was not permitted to contact his wife or children under any circumstances.

33.     On September 29, 2022, Agent Bolton presented Doe with two sets of written conditions: Standard Special Conditions for Sex Offenders; and Optional Special Conditions for Sex Offenders (hereinafter the "challenged conditions"). Bolton instructed Doe that failure to

sign and abide by the conditions set forth on both forms would result in the issuance of Reporting Instructions for immediate return to Georgia. Both forms state unequivocally, "In addition to the conditions of parole previously imposed, you are subject to the following condition(s) imposed pursuant to Condition No. 7 of the original conditions governing your parole."

34. During an October 21, 2022, phone call with Agent Bolton, Bolton stated unequivocally that the challenged conditions (all the conditions contained in the Optional Special and Standard Special Sex Offender Conditions) will remain in effect for the duration of his supervision by PBPP. Bolton also stated that "[he] can impose any conditions on [Doe] that [PBPP] feel[s] necessary."

35. During an October 26, 2022 meeting with Agent Bolton and the Harrisburg District Supervisor, Agent Bolton and the District Supervisor advised Doe of the actual process by which in-state probationers with comparable probation terms have additional conditions of supervision imposed by PBPP staff. The process consists of more than being coerced to sign a paper listing the conditons, like what Doe experienced; rather, PBPP staff use Form 331 and schedule a hearing before the trial judge of a particular defendant and request that the court impose the conditions; Doe was not afforded this or any other process comparable to that of an in-state offender.

36. While Doe was effectively evicted from his house due to Bolton's no-contact conditions, Doe missed his stepdaughter's 14th birthday, Thanksgiving and Christmas, New Years, and Jane's 3rd birthday.

37. On or about February 27, 2023, Bolton granted Doe permission to return home and permission to be reunited with his wife and children. Jane continues to demonstrate separation anxiety whenever Doe leaves for work, school, or just to run errands.

38. On or about July 2023, Doe was reassigned to a new Agent, Brent Smiley. Agent Smiley supervised Doe with all of the same conditions imposed by Agent Bolton; particularly the most onerous conditions enforcing the no-contact with his children condition unless Doe's approved supervisor was present.

39. During Smiley's tenure as Doe's Agent, Doe informed him that, due to not being ordered mandatory sex offender treatment, he would only continue to attend treatment but would not submit to polygraph examinations, as he had already taken several, all of which were found not to be deceptive, and they are very expensive. Smiley directed Doe to attend treatment indefinitely and submit for each and every polygraph requested of him by PBPP's preferred treatment provider.

40. On September 29, 2023, Doe submitted himself for another $400 polygraph and passed, having answered this polygraph, and all previous polygraphs, non-deceptively.

41. On or about March 2024, Doe was reassigned to a new Agent, Mike Daub. Agent Daub supervised Doe with all of the same conditions imposed by Agent Bolton, enforcing the no-contact condition unless Doe's approved supervisor was present.

42. On or about July 2024, Doe was reassigned to a new Agent, Luke Knox. Agent Knox supervised Doe with all of the same conditions imposed by Agent Bolton, enforcing the no-contact condition unless Doe's approved supervisor was present.

43. On or about September 2024, Doe was reassigned to a new Agent, Annette Gantz. Agent Gantz supervises Doe with all of the same conditions imposed by Agent Bolton, enforcing the no-contact condition unless Doe's approved supervisor was present.

44. On several home visits, Agent Gantz seemed to take exception to the fact that Doe would not simply be waiting at home for her. One on occasion, Doe had to explain to her why he could not enter his own home: his stepchildren were home, but his wife was not, and therefore, under the conditons set by PBPP, Doe could not even enter his home, let alone enjoy his home, until his approved supervisor returned.

45. The no-contact condition is onerous in its own right, but now that Jane is older and is comprehending the world in a more sophisticated way, the condition is absolutely intolerable. Jane does not understand why she cannot simply run to the grocery store with her father, or the gas station, or any other errand that feels like a wonderful adventure at that age; she can only accompany Doe if Doe's wife tags along.

## CLAIMS FOR RELIEF

### One: Violation of Substantive Due Process

46. Plaintiff incorporates by reference the allegations in paragraphs 1-45 above.

47. By imposing the "no contact" condition, Defendants have deprived Doe of his fundamental right to maintain a relationship with his daughter Jane and stepchildren.

48. The "no contact" condition is not narrowly tailored to achieve a compelling government interest.

49. By imposing the "no contact" condition, Defendants have violated Mr. Doe's rights under the substantive component of Due Process Clause of the Fourteenth Amendment to the United States Constitution

### Two: Violation of Procedural Due Process

50. Plaintiff incorporates by reference the allegations in paragraphs 1-49 above.

51. Does was not given an opportunity to be heard regarding any of the purported facts demonstrating justification for the challenged probation conditions. He was presented with no evidence and no reasons for PBPP's decision. He was not provided an opportunity to question the scope or appropriateness of the conditions prior to their imposition. Nor have Defendants adequately explained or justified the conditions since their imposition.

52. The challenged conditions were not imposed by a court, in a process substantially comparable to that afforded to in-state offenders. Instead, they were unilaterally imposed by Defendant, and they remain in place subject to Defendant's discretion.

53. Despite the lack of process, and the fact that no judge imposed the challenged conditions, Defendants have informed Mr. Goings that he will face revocation of his probation and, therefore, incarceration should he fail to comply with them.

54. Defendants continued imposition of the challenged conditions in the absence of any process violates Mr. Goings' rights under the procedural component of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### PRAYER FOR RELIEF

Wherefore, the Plaintiff prays that this Court issue a judgment against the Defendants:

**a)** preliminarily and permanently enjoining enforcement of the challenged probation conditions;

**b)** declaring that the "no-contact" provision violates Mr. Doe's Fourteenth Amendment right to substantive due process;

c) declaring that all of the challenged conditions violate Mr. Doe's Fourteenth Amendment right to procedural due process;

d) Award Plaintiff reasonable fees under the Equal Access to Justice Act and any other applicable statute or regulation; and

e) compensatory and punitive damages in an amount to be determined by a jury; and

f) any further relief demanded by the circumstances and deemed proper and just by this Court.

Respectfully Submitted, this __27th__ Day of __February__, 2025

John Doe, *Pro Se*

1364 Wandering Way
Harrisburg, PA 17110

## VERIFICATION

I, John Doe, hereby declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America. I reside in Pennsylvania with my lawful spouse and our three minor children (all three are United States citizens).

2. I have personal knowledge of my interactions with Defendants and personal knowledge of all substantive communications alleged in this complaint.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in foregoing Amended Complaint are true and correct to the best of my knowledge, information, and belief. See 28 U.S.C. § 1746

EXECUTED, this __27th__ Day of __February__, 2025

_John Doe_
John Doe, *pro se*