IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN CASTANEIRA, | : | Civil No. 1:25-CV-00361 |
| Plaintiff, | : | |
| v. | : | |
| C. JAMES FOX, Chairman of the Pennsylvania Board of Probation and Parole, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court are motions for temporary restraining order and/or preliminary injunction filed by Plaintiff Ryan Castaneira ("Castaneira"). (Docs. 11, 31.) Castaneira asks the court to enjoin Defendants from enforcing what Castaneira refers to as a "no contact" provision as a condition of his post-conviction supervision. For the reasons that follow, the motions will be denied.

### **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Castaneira, proceeding pro se, initiated this matter by filing a complaint on February 28, 2025. (Doc. 1.) He amended his complaint on March 20, 2025, and again on October 6, 2025, pursuant to the court's order. (Docs. 4, 35, 36.) Castaneira asserts six causes of action in his second amended complaint, including: substantive due process (Count I), procedural due process (Count II), Equal

---

[1] The court recites only the facts needed to resolve the pending motions.

1

Protection (Count III), due process (Count IV), First Amendment Associational rights and due process (Count V), and substantive and procedural due process and Equal Protection (Count VI).[2] (Doc. 36.) These claims center on a so-called "no contact" provision of his probation with the Pennsylvania Board of Probation and Parole ("PBPP"). (*Id.*) Castaneira served a ten-year sentence in the state of Georgia for attempted child molestation. (*See id.* ¶ 17.) *See also Commonwealth v. Castaneira*, 328 A.3d 1028, 1029–30 (Pa. Super. Ct. 2024).[3] Following his release, Castaneira transferred his parole from Georgia to Pennsylvania in December 2014 under the Interstate Compact for Adult Offender Supervision ("ICAOS"). (Doc. 36, ¶ 17.) His parole ended on September 28, 2019, and his twenty-year probation period began. (*Id.*) *See also Castaneira*, 328 A.3d at 1030.

In May 2018, Castaneira got married and purchased a home with the intent to live there with his wife and step-children. (Doc. 36, ¶ 18.) However, Castaneira

---

[2] The court conducted a careful review of the amended complaint and second amended complaint and determined that the only difference is that Castaneira is now proceeding under his name, rather than a pseudonym. (*Compare* Doc. 4, *with* Doc. 36.) Therefore, the court will proceed to resolve the current motions for temporary restraining order and/or preliminary injunction. (Docs. 11, 31.) *See Ball v. Famiglio*, 396 Fed. App'x 836, 838 (3d Cir. 2010) ("[T]here must be 'a relationship between the injury claimed in the party's motion [for a preliminary injunction] and the conduct asserted in the complaint.'") (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)).

[3] The court is permitted to take judicial notice of prior judicial opinions as matters of public record. *FCS Cap. LLC v. Thomas*, 579 F. Supp. 3d 635, 647 (E.D. Pa. 2022.) Thus, the court does so here.

2

was only permitted to be in the house when his step-children were at their father's house. (*Id.*)

On September 28, 2019, Castaneira initiated an ICAOS transfer request for his court-imposed consecutive term of probation from Georgia to Pennsylvania. (*Id.* ¶ 20.) He believed that the terms of probation imposed by Georgia would simply transfer to Pennsylvania, which included only one special condition – registration as a sex offender. (*Id.*) However, Defendants informed Castaneira that many of the conditions of his parole would also apply to his term of probation. (*Id.* ¶¶ 21–24.)

In January 2020, Castaneira and his wife had their first child together. (*Id.* ¶¶ 19, 32.) Prior to the birth of his daughter, Defendants advised Castaneira that his wife would need to complete an "approved supervisor program" in order for Castaneira to be around his daughter and step-children. (*Id.* ¶ 29.) After Castaneira's wife completed the approved supervisor program and another program, Castaneira was permitted to move into his home with his wife, daughter, and step-children in July 2020. (*Id.* ¶¶ 33–34.) Following a disagreement with his wife, Castaneira was charged with summary harassment in August 2022. (*Id.* ¶¶ 36–37.) This eventually led to Defendants requiring Castaneira to sign two sets of conditions for his probation: Standard Special Conditions for Sex Offenders and

Optional Special Conditions for Sex Offenders.  (*Id.* ¶ 40.)  The conditions went into effect on September 29, 2022.  (*Id.* ¶¶ 40, 44.)

The condition relevant to the present motions is the "no contact" provision, which provides:

> You must not have any contact with anyone under the age of 18 years old without the prior written approval of probation/parole supervision staff and if applicable, in agreement with your treatment provider. You must immediately report any of these contacts to your parole agent. Contact is defined as follows: (1) actual physical touching; (2) writing letters, sending messages, buying presents, sending email, sending instant messages, sending text messages, calling on a telephone/cell phone/blackberry; (3) and verbal communication, such as talking, as well as nonverbal communication, such as body language (waving, gesturing, winking), sign language and facial expressions; (4) direct or indirect contact through a third party.

(*Id.* ¶ 44(a).)  Castaneira is presently living with his wife, daughter, and step-children but cannot be at his home or with his daughter and step-children without his wife also being present.  (*See id.* ¶¶ 48, 56.)

On June 3, 2025, and August 26, 2025, Castaneira filed motions for temporary restraining order or preliminary injunction. (Docs. 11, 31.)  Both motions have been fully briefed and are ripe for disposition. (Docs. 18, 24, 32, 33, 34.)

## JURISDICTION AND VENUE

This court has jurisdiction under 28 U.S.C. §1331 because this action arises under federal law.  Venue is appropriate under 28 U.S.C. § 1391.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 allows a district court to enter a preliminary injunction. To obtain a preliminary injunction, a plaintiff must establish: (1) that they are likely to prevail on the merits of the case; (2) that they would suffer irreparable harm if preliminary injunctive relief were denied; (3) that the harm defendants would suffer from the issuance of an injunction would not outweigh the harm plaintiffs would suffer if an injunction were denied; and (4) that the public interest weighs in favor of granting the injunction. *Holland v. Rosen*, 895 F.3d 272, 285–86 (3d Cir. 2018) (citing *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015)). The first two factors are "gateway factors": if the plaintiff has not established those factors, the court need not consider the last two factors. *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). If the plaintiff does establish the first two factors, "[t]he court then determines 'in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'" *Id.* (quoting *Reilly*, 858 F.3d at 179).

A party seeking mandatory injunctive relief that would alter, rather than preserve, the status quo, "must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance,*

*Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)).  To obtain a mandatory injunction, the party seeking such an injunction must show "a substantial likelihood of success on the merits and that their 'right to relief is indisputably clear.'"  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *Trinity Indus., Inc. v. Chi. Bd. & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)).

A preliminary injunction is "an extraordinary remedy never awarded as of right."  *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  Thus, a preliminary injunction should only be awarded in the "limited circumstances" where "the movant, by a clear showing, carries the burden of persuasion."  *Holland*, 895 F.3d at 285.  Ultimately, the decision of whether to issue a preliminary injunction is left to the sound discretion of the district court.  *Pennsylvania v. President of United States*, 930 F.3d 543, 565 (2019) (citing *Winter*, 555 U.S. at 24).

## DISCUSSION

Castaneira moves for a preliminary injunction only on two claims – substantive due process and procedural due process.[4]  (Docs. 11, 31.)  The court

---

[4] In his reply brief, Castaneira argues the likelihood of success on the merits factor as to his Equal Protection and First Amendment claims for the first time in his reply brief.  (Doc. 24.)  Because he raises these arguments for the first time in reply, the court will not address these claims.

6

will first address whether Castaneira is likely to succeed on the merits as to each claim.

### A. Castaneira is not likely to succeed on the merits of his substantive due process claim.

The crux of Castaneira's argument regarding his substantive due process claim is that Defendants have deprived him of "a fundamental liberty interest: the right to maintain a relationship with his children." (Doc. 11, p. 8.)[5] Castaneira submits that the "no contact" condition is an "absolute prohibition" to associating with his biological daughter and stepchildren. (*Id.* at 8–10.)  He further argues that the "Approved Supervisor" program is just an exception to the condition and can be revoked at any time. (*Id.*)  Castaneira contends that the deprivation of spending time alone with his children is not narrowly tailored to serve a compelling government interest. (*Id.* at 10–15.)

Defendants agree that Castaneira has a liberty interest, as a parent, to the custody and care of his children, however, that can be "limited by the compelling government interest in protection of children." (Doc. 18, pp. 12–13 (citations omitted).)  This government interest includes preventing a person with a prior sex offense conviction involving a minor from having contact with minors. (*Id.* at 13–17.)

---

[5] In deciding Castaneira's motions, the court considered all briefs filed by the parties but, for simplicity, cites only one of the briefs in summarizing the parties' arguments.

To state a claim under § 1983, a plaintiff must establish "the violation of a right secured by the Constitution and laws of the United States," and "the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2006). The Due Process Clause of the Fourteenth Amendment provides no "State [shall] deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1. "The Clause . . . includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

To state a claim for violation of the right to substantive due process, a plaintiff must allege "the defendant, through conduct sanctioned under the color of state law, deprived her of a federal constitutional or statutory right." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). When "liberty interests are asserted as a basis for liability pursuant to § 1983, courts have consistently undertaken a threshold inquiry at the onset of litigation: . . . whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'" *McCurdy v. Dodd*, 352 F.3d 820, 826–25 (3d Cir. 2003).

In this case, Castaneira asserts that he is being deprived of the constitutional right to maintain a relationship with his children. (Doc. 11, p. 8.) Parents have

8

liberty interests in the "custody, care, and management of their children." *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997) (citations omitted). However, this liberty interest is not absolute and is limited "by the compelling governmental interest in the protection of children—particularly where the children need to be protected from their own parents." *Id.* (citations omitted).

Here, Defendants assert that the compelling governmental interest in enforcing the no contact provision is to protect all children, including Castaneira's biological daughter and step-children, from Castaneira who was convicted of attempted child molestation in Georgia. Further, Castaneira provides no evidence that he cannot have a relationship with his children under the current conditions of his probation. Even accepting that the approved supervisor program could be modified, Defendants assert that Castaneira's fundamental liberty interest as he defines it–the right to maintain a relationship with his children–is not violated presently because he is able to maintain a relationship with his children under the supervision of his wife. Thus, applying the heightened standard for a mandatory injunction, it is not "indisputably clear" that Castaneira has a likelihood of success on the merits of his substantive due process claim.

The court acknowledges that Castaneira relies on *United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007), and *United States v. Loy*, 237 F.3d 251 (3d Cir.

9

2001), to support his argument that the "no contact" provision violates his substantive due process rights. (*See* Doc. 11, pp. 7–15; Doc. 32, pp. 8–9; Doc. 34, pp. 5–6.) However, these cases are easily distinguishable. In both cases, the Third Circuit addressed conditions of supervised release imposed by the federal district court. And in both cases, the Third Circuit held that the district court abdicated its judicial responsibility to a probation officer under federal sentencing law. *See Voelker*, 489 F.3d at 153–55 (remanding the matter to the district court to clarify the intended scope of the lifetime ban on association with minors, whether it was to include a lifetime ban for his own children, and to provide "sufficient guidance for the exercise of the Probation Officer's discretion"); *Loy*, 237 F.3d at 267–70 (stating that "convicted pedophiles may, quite legitimately, . . . have restrictions placed on their parental rights" but finding that defendant had no children at present, thus, "absent a clearer sign from the District Court, the condition should be construed to apply only to other people's children, and not to Loy's own"). *Voelker* and *Loy* addressed issues on direct appeal and remanded the cases for further consideration by the district courts to avoid the abdication of judicial discretion. But, here, Castaneira is requesting the court to find that Defendants committed a substantive due process violation when imposing a no-contact condition, which is an entirely different issue that is not addressed in the cases relied upon by Castaneira.

For these reasons, the court finds that it is not "indisputably clear" that Castaneira is likely to succeed on the merits of his substantive due process claim.

### B. Castaneira is not likely to succeed on the merits of his procedural due process claim.

Castaneira argues that Defendants imposed the "no contact" condition, among others, without providing any process at all. (Doc. 11, pp. 15–20.) He asserts that the conditions imposed without due process create a "heavy burden on 'routine' activities" for Castaneira and his family. (*Id.* at 17.) Castaneira also argues that the preponderance of the evidence standard used to determine if he violated his terms of probation implicates the fundamental interest in freedom from confinement. (*Id.* at 17–18.) As to the lack of process, Castaneira submits that he received no notice of the conditions prior to their imposition, was given no evidence to support the imposition of the conditions, and was not afforded an opportunity to object to the conditions. (*Id.* at 18.) This, Castaneira asserts, is a deprivation of his liberty interests and violation of his procedural due process rights. (*Id.* at 19–20.)

Defendants argue that Castaneira's procedural due process claim is barred by *res judicata* because he litigated this issue through a habeas corpus petition before the Pennsylvania Court of Common Pleas and Superior Court. (Doc. 18, pp. 18–21.) Comparing the habeas proceedings and the procedural due process claim, Defendants submit that these proceedings litigate the same issues and

11

involve the same parties. (*Id.*) In reply, Castaneira submits that this case is not barred by *res judicata* as the four-factor test cannot be satisfied. (Doc. 24, pp. 18–26.)

The doctrine of *res judicata*, or claim preclusion, "bars a second suit involving the same parties or their privies based on the same cause of action" where a judgment on the merits was reached. *Reaves v. Pa. Bd. of Probation & Parole*, 580 F. App'x 49, 52 (2014) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). The doctrine of collateral estoppel, or issue preclusion, bars a second suit that has a different cause of action and "the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Id.* (quoting *Parklane Hosiery Co.*, 439 U.S. at 326 n.5.) Finality is an important requirement of both doctrines, but issue preclusion is less stringent in this regard. *Id.* at 53. Additionally, "issue preclusion has less-demanding party parity requirements." *Id.* (citing *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007)).

Here, although Defendants argue that *res judicata*, or claim preclusion, applies, the court finds that collateral estoppel, or issue preclusion, governs the court's analysis.[6] Issue preclusion bars relitigation when "(1) the issue sought to

---

[6] The court is not making a final determination regarding whether claim or issue preclusion applies in this case. Rather, applying the preliminary injunction standard for a mandatory injunction, *see Hope*, 972 F.3d at 320, the court is merely deciding whether it is "indisputably

be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Id.* (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995)). The Third Circuit has found that a "prior federal habeas decision may have preclusive effect in a [civil rights] action." *Id.* (quoting *Hawkins v. Risley*, 984 F.2d 321, 323 & n.4 (9th Cir. 1996)).

At the outset, like the court in *Reaves v. Pennsylvania Board of Probation & Parole*, 580 F. App'x 49, 53 (2014), the court notes that a prior state habeas petition may have preclusive effect in a civil rights action. As to the first factor for issue preclusion to apply, the issue in this case – whether Castaneira was provided appropriate due process for challenging probation conditions – is essentially the same issues litigated in Pennsylvania – whether PBPP has the authority to impose additional conditions of probation not ordered by the trial court and whether the imposition of those additional conditions amounts to an illegal sentence. *See Castaneira*, 328 A.3d at 1030. In his Pennsylvania habeas case, Castaneira argued that "his sentence is illegal because the PBPP lacked the authority to compel him to agree to special conditions, as they were unrelated to any probation conditions

---

clear" that Castaneira is likely to succeed on the merits of his procedural due process claim. Because issue preclusion appears to be a significant obstacle to the likelihood of success, the court resolves the instant motions on that basis.

imposed by the Georgia sentencing court."[7] *Id.* at 1032. He also argued that the new special conditions restricting his ability to be around minors without prior approval are not related to the condition to register as a sex offender imposed by Georgia. *Id.* Lastly, Castaneira made arguments regarding the ICOAS rules related to supervision versus probation. *Id.*

The Superior Court upheld the trial court's decision stating:

> We are likewise not persuaded by [Castaneira's] argument that the sentence is illegal, or the conditions otherwise impermissible, simply because he signed an agreement with the PBPP instead of being resentenced by a court in Pennsylvania. . . . In the same way that the PBPP may impose these special conditions on Pennsylvania-sentenced probationers, it could do the same to [Castaneira] as part of his acceptance of being transferred here. . . . In other words, the rules do allow sex offender prohibitions to be placed on transferees to the extent they are initially imposed upon those sentenced in Pennsylvania.

*Id.* at 1033–34. Thus, it appears to the court that the heart of the issue in both cases was resolved by the Pennsylvania Superior Court. Regarding the remaining factors, these issues were litigated through to finality in the Pennsylvania Court of Common Pleas and Pennsylvania Superior Court and a determination on those issues was essential to the resolution of Castaneira's habeas petition. *See id.*

---

[7] The "new special conditions" are the same conditions being litigated here. (*Compare* Doc. 36, ¶ 44 *with*, *Castaneira*, 328 A.3d 1029–30.)

Thus, this court cannot find that Castaneira has a substantial likelihood of success on the merits nor that his right to relief is indisputably clear. *See Hope*, 972 F.3d at 320.

### C. Remaining factors

Because the court finds that Castaneira does not have a likelihood of success on the merits of his claims, the court need not analyze the remaining preliminary injunction factors.

## CONCLUSION

For the reasons stated herein, the court will deny the motions for temporary restraining order and preliminary injunction. (Docs. 11, 31.) An appropriate order will issue.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Judge  
Middle District of Pennsylvania

Dated: October 15, 2025